UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                  CASE NO. 2:09-CR-20113
v.                               JUDGE VICTORIA A. ROBERTS
                                  MAGISTRATE JUDGE PAUL KOMIVES

STEVEN KELLER,

       Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT (docket #10)**

I.      RECOMMENDATION: The Court should deny defendant's motion to dismiss the indictment.

II.     REPORT:

A.     *Procedural Background*

On March 10, 2009, defendant Steven Keller was charged in a one count indictment with violating 18 U.S.C. § 2251. Specifically, the Indictment alleges in its entirety that defendant,

> [o]n or about January, 2009, within the Eastern District of Michigan did knowingly employ and use a minor, and did knowingly attempt to employ and use a minor, Jane Doe, a 10 year old girl, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means; all in violation of Title 18, United States Code, Sections 2251(a) and (e).

Indictment, at 1-2.

The matter is currently before the Court on defendant's motion to dismiss the indictment, filed on May 21, 2009. Defendant argues that the statute is an attempt by Congress to regulate

purely local, non-commercial activity having no substantial effect on interstate commerce, and thus exceeds Congress's power under the Commerce Clause. Accordingly, defendant argues, the Government has no jurisdiction to prosecute him in federal court. The Government filed its response to the motion on June 9, 2009. The Government argues that 18 U.S.C. § 2251(a) is a permissible exercise of Congress's power under the Commerce Clause because the activity that it regulates substantially affects interstate commerce, and that the electronic equipment used by defendant in this case establishes a sufficient nexus to interstate commerce to support federal jurisdiction. For the reasons that follow, the Court should deny defendant's motion to dismiss the indictment.

B.   *Legal Standard*

Rule 12 of the Federal Rules of Criminal Procedure provides that a defendant may bring a motion challenging "a defect in the indictment or information," including "a claim that the indictment or information fails to invoke the court's jurisdiction." FED. R. CRIM. P. 12(b)(3)(B). "A motion to dismiss is limited to the four corners of the indictment. The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. A motion to dismiss is not a device for a summary trial of the evidence." *United States v. Bordeal*, 595 F. Supp. 2d 1326, 1328 (S.D. Fla. 2009); *accord United States v. Birbragher*, 576 F. Supp. 2d 1000, 1005 (N.D. Iowa 2008); *United States v. Ditomasso*, 552 F. Supp. 2d 233, 238 (D.R.I. 2008); *see also*, *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (in ruling on a motion to dismiss an indictment, a court "do[es] not evaluate the evidence upon which the indictment is based."). Where a jurisdictional issue is intertwined with issues going to the merits of the case, the matter should be resolved at trial. *See United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998); *United States v.*

*Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987).

C.     *Discussion*

   1.     *Congress's Power under the Commerce Clause Generally*

The Commerce Clause, in its entirety, grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3. Congress's power under the Commerce Clause reached its zenith following a series of New Deal era cases, *see National Labor Relations Bd. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *United States v. Darby*, 312 U.S. 100 (1941); *United States v. Wrightwood Dairy Co.*, 315 U.S. 110 (1942), culminating in the Court's decision in *Wickard v. Filburn*, 317 U.S. 111 (1942), which upheld Congress's power to regulate purely intrastate activity which, in the aggregate, has a substantial effect on interstate commerce. *See id*. at 125-29. Specifically, in *Wickard* the Court upheld the application of regulations promulgated under the Agricultural Adjustment Act of 1938, which were designed to control the volume of wheat moving in interstate and foreign commerce in order to avoid surpluses and consequent abnormally low prices. Filburn sowed wheat on more acres than he was allotted under the regulations, intending to use the excess by consuming it on his own farm. In his challenge before the Court, Filburn argued the Commerce Clause did not authorize "federal regulation [of] production not intended in any part for commerce but wholly for consumption on the farm." *Wickard*, 317 U.S. at 118. The Court rejected this argument, reasoning that "[t]he effect of the statute before us is to restrict the amount which may be produced for market and the extent as well to which one may forestall resort to the market by producing to meet his own needs. That appellee's own contribution to the demand for wheat may be trivial by itself is not enough to remove him from the scope of federal regulation where, as here, his contribution, taken

together with that of many others similarly situated, is far from trivial." *Id.* at 127-128.

However, in a trio of cases starting with *United States v. Lopez*, 514 U.S. 549 (1995), the Court clarified the limits of Congress's authority under the Commerce Clause. *Lopez* considered the constitutionality of the Gun Free School Zones Act, 18 U.S.C. § 922(q), which prohibited the possession of a firearm within 1000 feet of a school. Extensively reviewing its prior Commerce Clause jurisprudence, the Court recognized three categories of activity which Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from interstate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*Lopez*, 514 U.S. at 558-59 (citations omitted). With respect to the third category, the Court emphasized that "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id.* at 559. Applying this test to the statute, the Court concluded that the Act was outside Congress's commerce power, for two reasons. First, the Court explained, the Act was "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561. Second, the statute contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.*

The Court next considered the scope of Congress's commerce power in *United States v. Morrison*, 529 U.S. 598 (2000), which addressed the constitutionality of the civil enforcement provision of the Violence Against Women Act (VAWA), 42 U.S.C. § 13981. In striking down the provision, the Court reiterated the three categories of activities that Congress may regulate set forth

in *Lopez*, *see Morrison*, 529 U.S. at 608-09, and concluded that the provision failed because, like the statute in *Lopez*, the provision regulated non-economic criminal activity which is traditionally the prerogative of the states, and contained no jurisdictional element. *See Morrison*, 529 U.S. at 613. In reaching this conclusion, the Court explicitly

> reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. The Constitution draws a distinction between what is truly national and what is truly local. In recognizing this fact we preserve one of the few principles that has been consistent since the Clause was adopted. The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.

*Id*. at 617-18.

Finally, in *Jones v. United States*, 529 U.S. 848 (2000), the Court considered the scope of the federal arson statute, 18 U.S.C. § 844(I), which prohibits arson of any property used in interstate commerce or of any property used in any activity affecting interstate commerce. The Court read the statute as not applying to the arson of an owner-occupied residence not used for any commercial purpose as a matter of statutory construction, *see Jones*, 529 U.S. at 852-57, but did so because a construction of the statute which criminalized such an arson would raise grave constitutional doubt under the Commerce Clause, *see id*. at 857-58.

However, more recently in *Gonzales v. Raich*, 545 U.S. 1 (2005), the Court made clear that *Wickard* remains good law and suggested that *Lopez* and *Morrison* have limited reach. In *Raich*, the Court considered the constitutionality of the Controlled Substances Act (CSA) as applied to the intrastate possession of locally grown marijuana used for medicinal purposes in accordance with a state medical marijuana law. The Court began its analysis by noting that the *Wickard* line of cases remains good law:

> Our case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. *See, e.g., Perez*, 402 U.S., at 151; *Wickard v. Filburn*, 317 U.S. 111, 128-129 (1942). As we stated in *Wickard*, "even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." *Id*., at 125. We have never required Congress to legislate with scientific exactitude. When Congress decides that the "'total incidence'" of a practice poses a threat to a national market, it may regulate the entire class. *See Perez*, 402 U.S., at 154-155 ("'[W]hen it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so'"(quoting *Westfall v. United States*, 274 U.S. 256, 259 (1927))). In this vein, we have reiterated that when "'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'" *E.g., Lopez*, 514 U.S., at 558 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 196, n. 27 (1968); emphasis deleted).

*Raich*, 545 U.S. at 17 (parallel citations omitted). Examining *Wickard* in particular, the Court explained that the case "establishes that Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id*. at 18. Finding the similarities between *Wickard* and the case before it "striking," the Court upheld the application of the CSA to the purely local cultivation and possession of marijuana. *See id*. at 19-22. Emphasizing that the task before the Court was not to determine whether intrastate cultivation and possession in fact substantially affects interstate commerce in the aggregate but only whether Congress had a rational basis for concluding that it does, *see id*. at 22, the Court concluded that

> [g]iven the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere, 21 U.S.C. § 801(5), and concerns about diversion into illicit channels, we have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA. Thus, as in *Wickard*, when it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to "make all Laws which shall be necessary and proper" to "regulate Commerce ... among the several States." U.S. Const., Art. I, § 8. That the regulation ensnares some purely

> intrastate activity is of no moment. As we have done many times before, we refuse to excise individual components of that larger scheme.

*Id.* (footnote omitted).

In reaching this conclusion, the Court rejected the respondent's reliance on *Lopez* and *Morrison*. First, the Court explained, those cases involved statutes which on their face and in their entirety were outside of Congress's commerce power. In *Raich*, on the other hand, the respondents were asking the Court to "excise individual applications of a concededly valid statutory scheme." *Id.* at 23. "This distinction is pivotal," the Court explained, because its cases have repeatedly held that "'[w]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power "to excise, as trivial, individual instances" of the class." *Id.* (quoting *Perez*, 402 U.S. at 154 (quoting *Wirtz*, 392 U.S. at 193)). Second, the Court found that *Lopez* and *Morrison* were distinguishable because the statutes at issue in those cases were discrete provisions regulating criminal, clearly non-economic conduct. The Court explained:

> Unlike those at issue in *Lopez* and *Morrison*, the activities regulated by the CSA are quintessentially economic. "Economics" refers to "the production, distribution, and consumption of commodities." Webster's Third New International Dictionary 720 (1966). The CSA is a statute that regulates the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market. Prohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product. . . . Because the CSA is a statute that directly regulates economic, commercial activity, our opinion in *Morrison* casts no doubt on its constitutionality.

*Id.* at 25-26 (footnote omitted).

2.    *Analysis*

Defendant is charged with violating the federal child sexual exploitation statute, which in relevant part provides:

7

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a). Defendant does not contend that this statute is unconstitutional on its face. Rather, he contends that the statute is unconstitutional as applied to him because the Government's case is based on the creation of a single video allegedly made by defendant when he placed a video camera in the home of a minor and recorded footage of her in her bathroom, which was transmitted to defendant's home, where he recorded it to a digital video disc (DVD). Defendant asserts that "[a]part from the creation of this video, the Government has neither alleged nor provided any discovery indicating that Mr. Keller has ever received, sent, or otherwise trafficked in child pornography or shared (or intended to share) the video at issue with any other person." Def.'s Br., at 2.

Whatever the merit of defendant's argument under *Lopez* and *Morrison*, his argument is untenable in light of the Supreme Court's decision in *Raich*. Indeed, every court that has considered the question after *Raich* has concluded that § 2251(a) is constitutional even as applied to purely local production and possession of child pornography. *See United States v. Malloy*, ___ F.3d ___, 2009 WL 1482594, at *9-*10 (4th Cir. May 28, 2009); *United States v. McCalla*, 545 F.3d 750, 753-56

(9th Cir. 2008); *United States v. Blum*, 534 F.3d 608, 611-12 (7th Cir. 2008); *United States v. Smith*, 459 F.3d 1276, 1284-85 (11th Cir. 2006); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1271-74 (10th Cir. 2005); *United States v. Zimmerman*, 529 F. Supp. 2d 778, 783-85 (S.D. Tex. 2007); *cf. United States v. Chambers*, 441 F.3d 438, 451-55 (6th Cir. 2006) (upholding parallel ban on possession of child pornography under 18 U.S.C. § 2252(a)(4)(B) as applied to possession of locally produced pornography). The reasoning of these cases, fully applicable here, is reflected in the Seventh Circuit's decision in *Blum*:

> Parallel concerns are present in the regulation of the interstate child pornography market, and accordingly since the *Raich* decision many circuits have rejected a similar Commerce Clause challenge to that raised by Blum. In fact, the Eleventh Circuit pre-*Raich* had upheld a Commerce Clause challenge to a comparable provision, 18 U.S.C. § 2252A(a)(5)(B) of the Child Pornography Prevention Act (CPPA), but reversed its conclusion when the Supreme Court remanded the case for reconsideration in light of *Raich*. *United States v. Maxwell*, 446 F.3d 1210 (11th Cir.2006). On remand, the Eleventh Circuit found the Raich analysis dispositive, stating that "[i]ndeed, much of the Court's analysis could serve as an opinion in this case by simply replacing marijuana and the CSA with child pornography and the CPPA." *Id.* at 1216. As that court and others noted, the CPPA is part of a comprehensive regulatory scheme designed to eliminate the market for child pornography similar to the regulation of controlled substances by the CSA. Moreover, Congress in enacting the statute recognized the danger posed by any child pornography regardless of origin, noting in essence that child pornography begets more child pornography, and therefore supporting the conclusion that the failure to regulate that class of activity would undermine the regulation of the interstate market in child pornography:
>> [T]he existence of and traffic in child pornographic images ... inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials; the sexualization and eroticization of minors through any form of child pornographic images has a deleterious effect on all children by encouraging a societal perception of children as sexual objects and leading to further sexual abuse and exploitation of them; and ... prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the

> material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children; and ... the elimination of child pornography and the protection of children from sexual exploitation provide a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct....
>
> Pub.L. No. 104-208, § 121, 1996 HR 3610,110 Stat. at 3009-27. As was the case in *Raich*, the high demand for child pornography in the interstate market presented the real danger that purely-intrastate child pornography would find its way to that market. Similarly, the same difficulty in distinguishing between locally-produced marijuana and interstate marijuana for enforcement purposes is problematic with respect to child pornography as well. Given those substantial concerns, and additionally considering the Congressional determination that the manufacture and possession of any child pornography itself feeds the market and increases demand for it, we hold that Congress rationally could conclude that Blum's actions, taken in aggregation with others engaged in similar activities, substantially affects interstate commerce.

*Blum*, 534 F.3d at 611-12; *accord United States v. Maxwell*, 446 F.3d 1210, 1216-17 (11th Cir. 2006); *United States v. Forrest*, 429 F.3d 73, 78-79 (4th Cir. 2005). This analysis compels the denial of defendant's motion to dismiss.

Before concluding, I note that defendant's reliance on the four-factor test established by the Court in *Morrison*, as explicated by the Sixth Circuit in *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001),[1] is misplaced in light of *Raich*. Regardless of the continuing validity of *Corp* after *Raich* as a general matter, *see, e.g.*, *United States v. Bowers*, No. 07-CR-20208, 2007 WL 4465263, at *5 (E.D. Mich. Dec. 17, 2007) (Rosen, J.), it is clear that the four factor test has no bearing here. When considering "a component of a broader regulatory scheme whose subject is decidedly economic . . . *Raich* guides our analysis." *Maxwell*, 446 F.3d at 1216 n.6 (declining to apply the four factors

---

[1] Under this four factor test, a court considering whether an activity "substantially affects" interstate commerce should analyze whether (1) the activity is commercial or economic in nature, (2) there is an express jurisdictional element which limits the statute's reach, (3) Congress made findings about the effects of the prohibited conduct on interstate commerce, and (4) the link between the activity and interstate commerce is attenuated. *See Corp*, 236 F.3d at 329 (citing *Morrison*, 529 U.S. at 610-12).

from *Morrison*); *cf. United States v. Croxford*, 170 Fed. Appx. 31, 35-36 (10th Cir. 2006) (applying four *Morrison* factors to facial challenge of § 2251(a), *i.e.*, to the determination whether the activity in general could be regulated by Congress, and applying *Raich* analysis to defendant's as-applied challenge).

D.      *Conclusion*

18 U.S.C. § 2251(a) on its face represents a valid exercise of Congress's power to regulate the interstate market in child pornography, a market comprising an economic exchange of commodities as in *Wickard* and *Raich*. Because Congress undoubtedly possesses the power to regulate this market, and because the purely intrastate production of child pornography may in the aggregate affect supply and demand in this market or otherwise frustrate Congress's comprehensive regulatory scheme, the Commerce Clause does not prohibit application of the statute to defendant's allegedly intrastate production of child pornography. *See Raich*, 545 U.S. at 17 (quoting *Lopez*, 514 U.S. at 558 (quoting *Wirtz*, 392 U.S. at 196, n. 27)) ("when 'a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence.'"); *id.* at 22 ("That the regulation ensnares some purely intrastate activity is of no moment. As we have done many times before, we refuse to excise individual components of that larger scheme."). Accordingly, the Court should deny defendant's motion to dismiss the indictment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2009

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 30, 2009.
>
> s/Eddrey Butts
> Case Manager